UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BRANDON KING,

                Petitioner,

                                                                   **REPORT AND RECOMMENDATION**
                                                                     **19 CV 5928 (KAM)(LB)**

      - against –

M. CAPRA, *Superintendent of*
*Sing Sing Correctional Facility*,

                Respondent.
---------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Petitioner, Brandon King, files this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2013 New York Supreme Court, Queens County, conviction of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)) and two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law §§ 265.03(1)(B), 265.03(3)). Pet., ECF No. 1. The Honorable Kiyo A. Matsumoto referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

BACKGROUND

    **I.**    **Underlying Crimes**

    According to the evidence adduced at trial,[1] in the early morning of September 13, 2008, in the Jamaica section of Queens County, Petitioner and victim Michael Stith, both local pimps, fought over an underage female, A.R. See T.T., ECF No. 7-4 at 111–12; T.T., ECF No. 7-5 at 19–20. This fight resulted in the shooting, and killing, of Stith. See T.T., ECF No. 7-4 at 113, 143.

---

[1] A jury trial was held before the Honorable Gregory Lasak in Queens County Supreme Court from April 23, 2013 to May 8, 2013. T.T., ECF No. 7-3 at 75. References to the criminal trial transcript ("T.T."), filed at ECF Nos. 7-3– 7-7, cite to the corresponding ECF page number(s).

1

Petitioner met A.R. the night of September 12, 2008 and wanted A.R. to work for him as a prostitute.[2] See T.T., ECF No. 7-5 at 13–14, 19. Later that night, Stith[3] met Petitioner and greeted him as "B-Dot." Id. at 15–17. Petitioner told Stith that A.R. was his "bitch," or prostitute. See id. at 17. However, when Stith asked A.R. whether Petitioner was her pimp, she replied no. Id. at 18. Petitioner and Stith began arguing over A.R., and Stith punched Petitioner. See id. at 19–20. Petitioner and Stith then began to fight. Id.

A.R. and another female, M.C., fled the scene once Petitioner and Stith began fighting. A.R. and M.C. heard gunshots as they left. See T.T., ECF No. 7-5 at 22; T.T., ECF No. 7-6 at 68–69. Although A.R. testified that she saw Petitioner flash a gun before she left, T.T., ECF No. 7-5 at 20–21, M.C. testified that she never saw Petitioner with a gun. T.T., ECF No. 7-6 at 69. Police Officer James Gheradi received a call that shots were fired at the corner of 116 Drive and Sutphin Boulevard. T.T., ECF No. 7-4 at 112. When Gheradi arrived on the scene, Stith was alone, shot multiple times with a semiautomatic .45 caliber gun, which ultimately resulted in Stith's death. See T.T., ECF No. 7-5 at 139; T.T., ECF No. 7-4 at 113, 143. Later that morning, Petitioner, A.R., and M.C. reunited and took a taxi to a hotel in Nassau County. See T.T., ECF No. 7-5 at 23–24. That same morning, Nassau Police Officer Douglas Pena found Petitioner, M.C., and A.R. at the Courtesy Hotel and arrested Petitioner on unrelated charges. T.T., ECF No. 7-5 at 53–55, 57–58.

Detectives Mark Lobel and Robert Reed of the New York City Police Department canvassed the crime scene where Stith had been shot and discovered a homeowner's surveillance camera with audio and video of the shooting. Id. at 88, 90–92; T.T., ECF No. 7-6 at 4. While faces could not be discerned, the video recorded the victim lying on the ground saying to the shooter, "B-Dot, why

---

[2] In the trial transcript, A.R. refers to Petitioner as Red. T.T., ECF No. 7-5 at 13.
[3] In the trial transcript, A.R. refers to Stith as Mike. T.T., ECF No. 7-5 at 20.

2

you gonna pop me, B-Dot?" before being shot three more times. See T.T., ECF No. 7-4 at 105; T.T., ECF No. 7-6 at 23; T.T., ECF No. 7-7 at 41.

After watching the video of the shooting and waiving his Miranda rights, Petitioner made two statements to Nassau Detective Frederick Goldman at the precinct. See id. at 105–09, 132–33; see also id. at 112–13, 120–22. Petitioner's statements to Goldman mentioned that he had oral sex with both M.C., an adult, and A.R., a minor, at the hotel. See Pre-trial Tr., ECF No. 7-3 at 52–53. Petitioner stated that "[w]hile in the room I asked [M.C.] to suck my dick and she did. After [M.C.] did, [A.R.] jumped in and I didn't stop her. I thought she was 18 years old." T.T., ECF No. 7-5 at 82.

During pre-trial proceedings, Petitioner moved to replace his trial counsel, Mr. Siegel, over their disagreements regarding Petitioner's decision to testify at trial. Pre-trial Tr., ECF No. 7-3 at 45–46. The Court, after asking if Petitioner had anything to add to his "boilerplate motion," denied the request and warned Petitioner of the risks associated with testifying at trial. See id. at 45–47, 65–66. After speaking with his counsel, Petitioner informed the Court that he had changed his mind and would not testify. See id. at 66–67.

Petitioner moved *in limine* to preclude any mention of the separate crime of oral sex with a minor at the Courtesy Hotel. T.T., ECF No. 7-3 at 87–88. The Court ruled that the prosecution would not "bring out any facts about the female that was underage in [the] motel room with the [petitioner]," however it allowed the prosecution to bring out facts related to prostitution as the motive for the shooting. T.T., ECF No. 7-4 at 94–95.

During trial, outside the presence of the jury, Petitioner sought to redact his statements to Detective Goldman regarding oral sex in the hotel. T.T., ECF No. 7-5 at 80–82. The Court ruled

3

that only Petitioner's statement regarding oral sex with A.R. would be redacted. See id. at 99. Petitioner noted his exception to the Court's ruling. Id. at 125.

Defense counsel cross-examined Detectives Lobel and Reed during trial. See id. at 97; T.T., ECF No. 7-6 at 13.  Counsel asked Lobel whether he had interviewed Shameik Corbett, a potential witness, and Lobel replied that he would have to "go back and look if [he] did or if [he] didn't." T.T., ECF No. 7-5 at 97. After Lobel's response, counsel concluded the cross-examination. Id. Lobel also testified that approximately four months prior to Stith's shooting, he and Reed learned that Petitioner's nickname was "B-Dot." Id. at 95–97; see T.T., ECF No. 7-6 at 12–13.

The People called two expert witnesses at trial, Dr. Sean Kelly, an expert in anatomical and forensic pathology, and Detective Gregory Dicostanzo, an expert in firearms analysis and microscopy. See T.T., ECF No. 7-5 at 137; T.T., ECF No. 7-6 at 31. Dr. Kelly testified that Stith's wounds appeared to be "consistent with distant range" rather than a "close range series of gunshot wounds." T.T., ECF No. 7-6 at 44. The defense did not call any experts.

The defense called M.C. to testify. Id. at 60. M.C. testified that she was Petitioner's wife and she had never heard Petitioner called "B-Dot." Id. at 62, 75. M.C. also testified that defense counsel had met with her to prepare her to testify. Id. at 89–90. When asked whether counsel had prepared her for the prosecutor's cross-examination, M.C. replied that she was given a paper with "questions that [defense counsel] was going to ask [her]" on it. Id. at 90.

During summation, defense counsel described the murder as "horrific" and an "execution," however denied that it was Petitioner's doing. See id. at 148–49; T.T., ECF No. 7-7 at 12. The People described the death of Stith as "an execution on a Queens street" that happened at "point-blank range." T.T., ECF No. 7-7 at 18–19.

4

The jury convicted Petitioner of one count of Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. Id. at 93. On October 2, 2013, Petitioner was sentenced to twenty-five years to life for the second degree murder conviction and fifteen years for each count of weapon possession, to run concurrently, as well as five years post-release supervision. Sentencing Tr., ECF No. 7-7 at 110–11.

## II. Procedural History

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department, arguing that the trial court's refusal to redact the statement regarding oral sex with M.C. deprived him of a fair trial. Br. Def.-Appellant, ECF No. 7-1 at 20. Petitioner also filed a *pro se* supplemental brief, raising claims of ineffective assistance of counsel and prosecutorial misconduct. Def.'s Suppl. Br., ECF No. 7-1 at 170, 179. The Appellate Division, Second Department affirmed Petitioner's conviction on May 2, 2018. People v. King, 161 A.D.3d 772 (2d Dept. 2018). Petitioner's request for leave to appeal to the New York State Court of Appeals was denied on July 25, 2018. People v. King, 31 N.Y.3d 1150 (2018).

While Petitioner's direct appeal was pending, Petitioner filed a *pro se* motion to vacate his conviction pursuant to section 440.10 of the New York Criminal Procedure Law. Def.'s Mot. to Vacate Br., ECF No. 7-1 at 86. Petitioner's motion claimed he was denied a fair trial based on ineffective assistance of counsel and prosecutorial misconduct. Id. at 86–87. Petitioner argued that his trial counsel was ineffective because: (1) there was a "conflict of interest" between him and counsel over whether Petitioner should testify; (2) counsel failed to prepare M.C. for her testimony and correct her false statement about their marriage; (3) counsel failed to adequately cross-examine Detective Lobel; and (4) counsel failed to obtain an expert witness and object to the People's firearms expert. See id. at 92–93, 95–97, 98, 100–01. Additionally, Petitioner argued that the

5

prosecutor knowingly failed to correct A.R.'s false testimony, and that the prosecutor's summation included misleading and inflammatory remarks about Petitioner. Id. at 107–08. Petitioner's motion was summarily denied by the trial court on February 23, 2017. ECF No. 7-1 at 161. The New York Supreme Court, Appellate Division, Second Department denied Petitioner's request for leave to appeal the decision on August 20, 2018. Decision & Order, ECF No. 7-2 at 156.

The trial court dismissed Petitioner's motion to vacate, noting that portions of Petitioner's ineffective assistance of counsel claims were "record-based claims" and should be addressed by the Appellate Division on direct appeal. ECF No. 7-1 at 164–65. On direct appeal, the Appellate Division dismissed most of Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims, stating they were based on "matters dehors the record."[4] King, 161 A.D.3d at 775.

### III.  Instant Petition

Petitioner timely filed the instant *pro se* petition seeking a writ of habeas corpus.[5] Petitioner challenges his conviction and asserts he was denied a fair trial on the following grounds: (1) the trial court's refusal to redact the portion of his statement mentioning oral sex with M.C.; (2) ineffective assistance of counsel based on a "conflict of interest" with counsel's failure to adequately prepare trial witness M.C., failure to adequately cross-examine investigating Detective Lobel, and failure to obtain an expert witness; and (3) prosecutorial misconduct, as the prosecutor

---

[4] The trial and appellate courts seemingly pointed to each other as the proper Court for Petitioner to raise his claims. Perhaps this is why Respondent does not raise procedural default here. Thus, the Court reviews Petitioner's claims under both AEDPA deference and *de novo* standards of review. See *Infra* n. 8.

[5] As Petitioner's conviction was made final on October 23, 2018, the deadline for filing Petitioner's habeas petition was one year later on October 23, 2019. See Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2d Cir. 2002) (conviction is final for AEDPA purposes when a petitioner's time to seek direct review in the United States Supreme Court by writ of certiorari expires). Petitioner filed this habeas petition on October 18, 2019, within the one-year statute of limitations mandated by 28 U.S.C. § 2244(d)(1). See Pet., ECF No. 1. Petitioner's two requests for extensions of time to file his petition were therefore unnecessary because the petition was timely. Pet'r's June 25, 2019, and July 12, 2019, Letters, ECF No. 1 at 34–36.

knowingly failed to correct false testimony and misrepresented the case during summation. Pet., ECF No. 1 at 5–6, 8.  Respondent has opposed the petition.[6] Opp'n to Pet., ECF No. 7.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground the he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a 'difficult to meet,' . . . and 'highly deferential standard[,]'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," or "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result. Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor,

---

[6] Although Respondent's brief argues "harmless error" in the alternative, harmless error was never mentioned in the state court's decision. Opp'n to Pet., ECF No. 7 at 28, 54; see People v. King, 161 A.D.3d 772 (2d Dept. 2018); ECF No. 7-1 at 162–66. Thus, Respondent's invocation of harmless error is inapposite.

7

529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law if the "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410; see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Federal habeas review is limited to when Petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.") (citations omitted). "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotation marks and citation omitted).

## II. Petitioner's Claims

Petitioner raises three grounds for habeas relief: (1) the trial court's refusal to redact his statement prejudiced him; (2) ineffective assistance of counsel; and (3) prosecutorial misconduct. Pet., ECF No. 1 at 5–6, 8.

### a. Redaction Claim

Petitioner argues that the trial court's refusal to redact his statement regarding oral sex with M.C. at the hotel deprived him of a fair trial under the Fourteenth Amendment because the

8

statement was "inflammatory," "prejudicial," and served no probative value. Id. at 5. Respondent argues that this ground is not cognizable on federal habeas review, and even if it was, the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law. Opp'n to Pet., ECF No. 7 at 20–21. Petitioner's redaction claim should be denied.

The Supreme Court has not decided whether the failure to redact part of a defendant's statement violates a federal right. However, the Court has noted its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986). Errors in the admission of evidence may deprive a defendant of due process only when the evidence is "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)). A habeas petitioner must show that the "erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985).

Here, Petitioner claims he is entitled to habeas relief based on the trial court's evidentiary ruling which he alleges was in error. However, Petitioner's claim that the trial court erred by allowing his statement regarding oral sex with M.C. into evidence is not cognizable on federal habeas review because it is an "ordinary evidentiary ruling[]." See Crane, 476 U.S. at 689. Even if Petitioner's claim were cognizable, the claim would be denied as without merit. The state court determined that the admission of the unredacted statement served an overall probative purpose of allowing the jury to see the "nature of the relationship" between Petitioner and M.C. in order to better assess M.C.'s credibility. People v. King, 161 A.D.3d 772, 773–74 (2d Dept. 2018). Admission of Petitioner's statement was not "so extremely unfair" as to violate "fundamental

9

conceptions of justice." See Dowling, 493 U.S. at 352. Even if Petitioner's claim was cognizable on habeas review, the state court's decision to allow the statement into evidence was not contrary to, or an unreasonable application of, clearly established Federal law. Therefore, Petitioner's claim should be denied.

### b. Ineffective Assistance of Counsel Claim

Petitioner argues that he was deprived a fair trial based on the ineffective assistance of trial counsel. Pet., ECF No. 1 at 6. Petitioner claims ineffective assistance of counsel on the grounds that: (a) there was a "conflict of interest" between Petitioner and counsel; (b) counsel failed to adequately prepare a defense witness; (c) counsel failed to adequately cross-examine an investigating detective; and (d) counsel failed to consult or obtain an expert witness. Id. at 6, 9. Respondent argues that the state court's rejection of Petitioner's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of, clearly established Federal law. Opp'n to Pet., ECF No. 7 at 29. Petitioner's ineffective assistance of counsel claims should be denied.

To establish a constitutional claim of ineffective assistance of counsel, Petitioner must show that: [1] "counsel's performance was deficient[,]" and [2] Petitioner suffered prejudice as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance must fall "below an objective standard of reasonableness" to be deficient. Id. at 687–88. Counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Id. at 686. In order to show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Reasonable probability is "a probability sufficient to undermine confidence in the

10

outcome." Id. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" and counsel's actions are presumed to be part of a "sound trial strategy." Id. at 689–90. The combined deferential standards of review under AEDPA and Strickland create a "doubly" deferential standard of review. Harrington, 562 U.S. at 105. A court should "assess counsel's overall performance throughout the case" when evaluating a claim of ineffective assistance. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

### i. "Conflict of Interest" Claim

Petitioner argues that his counsel was ineffective because of a "conflict of interest" that existed regarding Petitioner's decision to testify. Pet., ECF No. 1 at 9. Petitioner claims that the trial court failed to adequately inquire into counsel's ability to provide meaningful representation as a result of the conflict. See id. The state court found that Petitioner failed to establish good cause for his motion to substitute counsel and the trial court adequately inquired into Petitioner's request. People v. King, 161 A.D.3d 772, 774 (2d Dept. 2018). While the Supreme Court has held that an actual conflict of interest adversely affecting a lawyer's performance would show ineffective assistance of counsel, Petitioner has not established an actual conflict of interest here. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) ("In order to establish a violation of the Sixth Amendment, a defendant . . . must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."). Petitioner has not presented any evidence suggesting that his disagreements with his trial counsel amounted to a conflict of interest adversely affecting his counsel's performance. As a result, Petitioner's claim fails the first prong of Strickland. Moreover, Petitioner's argument is belied by the trial record, which demonstrates that Petitioner decided against testifying after the trial judge warned Petitioner of the risks associated with testifying. See Pre-trial Tr., ECF No. 7-3

11

at 65–67. Petitioner presents no evidence suggesting that his decision was compelled by counsel or the Court. Thus, the state court's decision was not contrary to, or an unreasonable application of clearly established Federal Law, and Petitioner's claim should be denied.

### ii. Remaining Ineffective Assistance Claims

Petitioner argues that counsel's failure to adequately prepare defense witness M.C., adequately cross-examine an investigating detective, and obtain an expert witness, further demonstrate that counsel provided constitutionally ineffective assistance. Pet., ECF No. 1 at 6, 9. Petitioner argues that defense witness M.C. was underprepared by counsel, which allowed her to make false statements during her testimony, such as claiming to be Petitioner's wife, which counsel did not correct. See id. at 9–10. Petitioner asserts that counsel's failure to adequately interview M.C. before her testimony demonstrates that counsel was constitutionally ineffective. See id.

However, counsel's preparation of M.C. did not fall below the standard set by Strickland. Counsel met with M.C. the day before trial and provided her with questions that he planned to ask her during her testimony. T.T., ECF No. 7-6 at 89–90. Counsel also warned M.C. that the prosecutor would try to bring out inconsistencies in her story during cross-examination. Id. at 90. M.C. appeared to understand the prosecutor's questions during trial, and her testimony, which denied seeing Petitioner with a gun on the night of the shooting, contradicted A.R.'s testimony. See id. at 69; T.T., ECF No. 7-5 at 20. Additional preparation would not have likely made a difference in the outcome of Petitioner's case. See Williams v. Phillips, 297 F. App'x 56, 58–59 (2d Cir. 2008) (noting that additional pre-trial preparation for the alibi witnesses could not have remedied the weaknesses in their testimonies, and consequently habeas relief was inappropriate). Counsel's preparation of M.C. did not fall below an objective standard of reasonableness.

Furthermore, Petitioner provides no support for the claim that M.C. lied about her marriage to Petitioner.

Likewise, Petitioner fails to establish that counsel's cross-examination of Detective Lobel was deficient under Strickland. Although counsel did not conduct extensive questioning of Lobel after asking him about a potential witness named Shameik Corbett, counsel later cross-examined Lobel's partner, Detective Reed, thoroughly about Corbett. See T.T., ECF No. 7-5 at 97; T.T., ECF No. 7-6 at 17–18. Reed, unlike Lobel, testified that he had actually interviewed Corbett. T.T., ECF No. 7-6 at 17–18. Petitioner fails to demonstrate what specific evidence counsel could have obtained from Lobel that counsel did not get from Reed. Counsel's decision to focus on Reed's cross-examination is presumed to be reasonable and sound trial strategy. See Strickland, 466 U.S. at 689 (noting that counsel's actions in trial are strongly presumed to be part of a "sound trial strategy"). Thus, Petitioner fails to establish that counsel was deficient in cross-examining Lobel, and that but for counsel's ineffective assistance, the jury's verdict would have been different.

Petitioner next argues that because counsel failed to consult or obtain an expert witness, he was unqualified to effectively cross-examine the People's firearms expert and EMT witness, and, thus, allowed their testimonies to stand "uncontroverted." Pet., ECF No. 1 at 12, 22. Petitioner asserts that counsel's failure to obtain an EMT expert's opinion on the victim's injuries deprived him of meaningful representation. See id. at 12. However, Petitioner's claim is not supported by the record. The state court rejected Petitioner's claim as unsubstantiated under section 440.10(4)(b) of New York Criminal Procedure Law, noting that Petitioner failed to identify a witness who would have testified for him and what they could have said.[7] ECF No. 7-1 at 165. Petitioner has not

---

[7] Denials under N.Y. C.P.L. § 440.30(4)(b) may be treated as merits-based determinations afforded AEDPA deference. See Washington v. Cuomo, No. 06 CV 6477, 2009 WL 3379076 at *4 (E.D.N.Y. Oct. 19, 2009) (treating denial of a motion pursuant to N.Y. C.P.L. § 440.30(4)(b) as a merits-based decision); cf. Garcia v. Portuondo, 104 F. App'x 776,

established what information an EMT expert could have provided that would have undermined the state's evidence. Counsel's decision not to call an expert witness is presumed to have been strategic. See Strickland, 466 U.S. at 690 (noting that counsel is "strongly presumed to have . . . made all significant decisions in the exercise of reasonable professional judgment."). Additionally, Petitioner's claim that counsel was unable to effectively cross-examine the firearm expert and EMT witness is not supported by the record. Petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness. Moreover, Petitioner has failed to show that the absence of an EMT expert changed the outcome of the case given the People's overwhelming evidence against Petitioner. Consequently, Petitioner's claim fails both prongs of the Strickland standard.

Petitioner's ineffective assistance of counsel claims, even when considered cumulatively, fail to establish that counsel's overall performance at trial prejudiced the outcome of the case. See Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) (noting that allegations of ineffective assistance of counsel should be reviewed together because a claim of ineffective assistance "can turn on the cumulative effect of all of counsel's actions"); see also Gross v. Graham, 802 F. App'x 16, 18 (2d Cir. 2020) ("In assessing prejudice, we consider the cumulative effect of the errors committed by counsel.") (citation omitted). Having considered all of Petitioner's ineffective assistance of counsel claims, Petitioner's claims should be denied, as the state court's decision was not contrary to, or an unreasonable application of, clearly established Federal law.[8]

---

779 (2d Cir. 2004) (ruling that a state court's denial of a motion pursuant to N.Y. C.P.L. § 440.30(4)(c) is a "judgment on the merits").

[8] It is unclear from the trial court's decision whether Petitioner's claims that counsel failed to adequately prepare defense witness, M.C., and adequately cross-examine Detective Lobel were dismissed under N.Y. C.P.L. § 440.30(4)(d), which may be treated as a judgment on the merits and afforded AEDPA deference, or N.Y. C.P.L. § 440.10(2)(b), which would not be treated as a merits-based determination and must undergo *de novo* review. See ECF No. 7-1 at 163–65; Washington, 2009 WL 3379076 at *4 (treating denial of a motion pursuant to N.Y. C.P.L. § 440.30(4)(b) as a merits-based decision); Curry v. Bennett, No. 02 CV 3655, 2003 WL 22956980, at *15 (E.D.N.Y. Oct. 17, 2003) (noting that the state court's dismissal of petitioner's claims based on N.Y. C.P.L. § 440.10(2)(b) was

### c. Prosecutorial Misconduct Claim

Petitioner argues that prosecutorial misconduct further denied him a fair trial. Pet., ECF No. 1 at 8. Petitioner raises that: (1) the prosecutor failed to correct false testimony from a witness, and (2) the prosecutor's comments during summation were inflammatory and misrepresented the case. See id. at 11. Respondent argues that the state court's decision regarding the claims was not contrary to, or an unreasonable application of, clearly established Federal law. Opp'n to Pet., ECF No. 7 at 45–46. Petitioner's prosecutorial misconduct claim should be denied.

---

a decision that "clearly rested on New York procedural law rather than federal law."). If Petitioner's claims were not adjudicated on the merits, then the Court must review the claims *de novo*. See Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001) ("If a state court has not adjudicated the claim 'on the merits,' we apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims.") (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)).

Because it is unclear from the record which grounds the trial court relied on to deny Petitioner's remaining ineffective assistance of counsel claims, and consequently which standard of review should apply, this Court reviews the claims under both standards. See Pepe v. Walsh, 31 F. Supp. 3d 441, 488–89 (N.D.N.Y. 2012), aff'd, 542 F. App'x 54 (2d Cir. 2013) (reviewing petitioner's claims under both AEDPA deference and *de novo* standards of review, where it was unclear whether petitioner's claims had been adjudicated on the merits).

However, even under *de novo* review, Petitioner's claims must still be denied. See Harrington, 562 U.S. at 105 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."). Petitioner fails to establish a constitutional claim of ineffective assistance of counsel as trial counsel's preparation of M.C. was not deficient under Strickland. Cf. Hernandez v. Artus, No. 09 CV 05694, 2020 WL 2769404, at *8, 14 (E.D.N.Y. May 28, 2020) (denying petitioner's ineffective assistance of trial counsel claims under *de novo* review); Acevedo v. Capra, No. 13 CV 5579, 2014 WL 1236763, at *17 (E.D.N.Y. Mar. 25, 2014), aff'd, 600 F. App'x 801 (2d Cir. 2015) (dismissing some of petitioner's ineffective assistance of counsel claims under *de novo* review); McDowell v. Heath, No. 09 Civ. 7887, 2013 WL 2896992, at *28–40 (S.D.N.Y. June 13, 2013) (denying petitioner's ineffective assistance of counsel claims under *de novo* review). Even assuming *arguendo* that defense counsel failed to prepare M.C. to testify, the prosecution's case did not hinge on the credibility of M.C.'s testimony. Thus, the outcome of Petitioner's trial would not have been different absent defense counsel's alleged failure to prepare M.C. See Williams, 297 Fed. App'x 56, 58–59 (affirming the judgment of the district Court where counsel's alleged failure to prepare a defense witness would not have changed the outcome of the case); Kliti v. Savage, No. 07 CV 3168, 2013 WL 1192777, at *17 (E.D.N.Y. Mar. 22, 2013) (same).

Additionally, Petitioner's claim that counsel failed to effectively cross-examine Lobel is without merit because Petitioner fails to show that counsel's cross-examination of Lobel fell below an "objective standard of reasonableness" or that it prejudiced Petitioner's trial result. See Strickland, 466 U.S. at 687–88; Gonzalez v. United States, No. 12 Civ. 5226, 2013 WL 5289793, at *24 (S.D.N.Y. Sept. 19, 2013) (denying petitioner's claim, under *de novo* review, that trial counsel failed to properly cross-examine a witness, where petitioner failed to show "deficient performance or prejudice arising from [counsel's] failure to pursue [a particular] line of questioning."); see also Dunham *v.* Travis, 313 F.3d 724, 732 (2d Cir. 2002) (decisions by counsel "about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim.") (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)).

15

### i. Failure to Correct False Testimony Claim

Petitioner argues that the prosecutor knowingly allowed a witness to give false testimony at trial. Pet., ECF No. 1 at 8. Specifically, Petitioner claims that the People's witness, A.R., testified falsely when she claimed that she did not understand what Petitioner had meant when he referred to her as his "bitch" the night of the murder. See Def.'s Suppl. Br., ECF No. 7-2 at 1–2; see also T.T., ECF No. 7-5 at 17. Petitioner argues A.R.'s testimony contradicted an earlier statement she made to the police where she understood "bitch" to mean prostitute when someone named Jason had said it. See Def.'s Suppl. Br., ECF No. 7-2 at 1–2; see also Def.'s Mot. to Vacate Br., ECF No. 7-1 at 117. Petitioner further asserts that the prosecutor knew, or should have known, that A.R.'s testimony at trial was false and failed to correct it. See Def.'s Suppl. Br., ECF No. 7-2 at 1–2. Had this contradiction been revealed, Petitioner argues, it would have undermined A.R.'s credibility and benefited his defense. See id.

However, the state court's decision denying Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Federal law. A prosecutor's failure to correct testimony which the prosecutor knows to be false deprives a defendant of due process. See Napue v. Illinois, 360 U.S. 264, 269–70 (1959). Here, Petitioner fails to show that A.R.'s testimony was false and, if it was, that the prosecutor knew that it was. The state court ruled under CPL 440.30(4)(b) that Petitioner had both "failed to support his claim with sufficient facts and . . . failed to adequately allege a ground constituting a legal basis for his motion." ECF No. 7-1 at 166. A.R.'s earlier statement, made out of court, referenced her specific conversation with a person unrelated to this case. See Def.'s Mot. to Vacate Br., ECF No. 7-1 at 117. Conversely, A.R.'s trial testimony referred to her understanding of Petitioner's words on the night of September 12, 2008. See T.T., ECF No. 7-5 at 17. Thus, Petitioner fails to establish that A.R. perjured herself at trial and that the

16

prosecutor knew A.R. was lying. Moreover, A.R.'s understanding of what Petitioner meant that night by referring to her as his "bitch" was not a material issue at trial. While A.R. was an important witness for the People, she was not the only source of evidence that the People relied on to establish Petitioner's guilt. Thus, Petitioner fails to establish that A.R.'s testimony at trial was false and that the prosecutor had a duty to correct it.

### ii. Improper Prosecutorial Comments Claim

Petitioner claims that the prosecutor's inflammatory remarks during summation "preyed [on] the fears" of the jurors and denied him a fair trial. See Pet., ECF No. 1 at 11. Petitioner argues that the prosecutor's portrayal of him as a "callous murderer" who "executed" the victim at "point-blank" range misrepresented the case and contradicted expert witness Dr. Sean Kelly's testimony.[9] Id. at 11, 30; see Def.'s Suppl. Br., ECF No. 7-2 at 3–5.

Statements by a prosecutor deprive a defendant of a fair trial only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The Court in Darden found that a prosecutor's comments describing the defendant as an "animal" who "shouldn't be out of his cell unless he has a leash on him" did not deny the defendant a fair trial. Id. at 179, 180 n.12, 181. This standard is high, and courts have great discretion in determining whether prosecutorial conduct has deprived a defendant of due process. See Parker v. Matthews, 567 U.S. 37, 48 (2012) ("[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations'") (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). A prosecutor's comments "must be evaluated in light of the defense['s] argument" preceding it. Darden, 477 U.S. at 179. Inappropriate comments from the

---

[9] Dr. Kelly testified at trial that the victim's wounds did not appear consistent with a close-range shooting and looked like they were shot from a distance. T.T., ECF No. 7-6 at 44.

prosecutor during summation do not undermine the fairness of the proceedings unless the evidence is "so closely balanced that the prosecutor's comments [are] likely to have had a substantial effect on the jury." Tankleff v. Senkowski, 135 F.3d 235, 253 (2d Cir. 1998).

Here, the prosecutor's characterization of the victim's death as an "execution" responded to the defense's comments describing the death depicted in the video as "horrific" and an "execution." See T.T., ECF No. 7-6 at 148–49; T.T., ECF No. 7-7 at 12, 18. Taking the defense's summation into account, the state court determined that the prosecutor's comments "did not exceed the bounds of permissible rhetorical comment." See People v. King, 161 A.D.3d 772, 775 (2d Dept. 2018). Similarly, the state court ruled that the prosecutor "properly marshaled the evidence based on the People's view of the facts," and, thus, the prosecutor's description of the shooting was a fair comment on the trial evidence. See id. The victim was shot six times, and a video showed the victim on the ground pleading for his life. See T.T., ECF No. 7-6 at 34; T.T., ECF No. 7-7 at 17. Moreover, the trial judge instructed the jury that the summations were not evidence. T.T., ECF No. 7-4 at 98. The prosecution's comments were not shown to have "so infected the trial with unfairness" to result in a denial of due process. See Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643). Thus, Petitioner's claim should be denied as the state court's decision regarding the prosecution's summation was not contrary to, or an unreasonable application of, clearly established Federal law.

## CONCLUSION

Accordingly, it is respectfully recommended that Petitioner's application for a writ of habeas corpus should be denied. As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United

States v. Perez, 129 F.3d 255, 259–60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

                                                           /S/
                                        LOIS BLOOM
                                        United States Magistrate Judge

Dated: August 21, 2020
       Brooklyn, New York